United States District Court
Middle District of Florida
Jacksonville Division

**PAMELA DUNKEL,**

      *Plaintiff,*

v.                                      **NO. 3:15-CV-949-J-34PDB**

**DAWN HAMILTON,**

      *Defendant.*

---

## Report & Recommendation

In  2013, in separate federal criminal cases in the Eastern District of Virginia, Michael Dunkel and Dawn Hamilton pleaded guilty to major fraud against the United States, in violation of 18 U.S.C. § 1031.[1] His wife, Pamela Dunkel, without a lawyer, now sues Hamilton for torts based on her contention Hamilton's fraud caused her husband's conviction.[2] Doc. 24. Before the Court is Hamilton's motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(6) for lack of personal

---

[1]The criminal cases against Dunkel and Hamilton are *United States v. Dawn Lee Hamilton*, No. 1:13-cr-75 (E.D. Va.) and *United States v. Michael Brian Dunkel*, No. 1:13-cr-220-GBL (E.D. Va.). Doc. 27-1; Doc. 27-2; Doc. 38-7.

[2]Dunkel also brought civil actions here against others related to the criminal cases. *See Dunkel v. Joseph Richards*, No. 3:15-cv-945-J-34PDB; *Dunkel v. Joseph Hertogs*, No. 3:15-cv-946-J-34PDB; *Dunkel v. David San Born*, No. 3:15-cv-947-J-34PDB; *Dunkel v. Keith Hedman*, No. 3:15-cv-948-J-34PDB. The Court dismissed *Richards*, *Hertogs*, and *Born* without prejudice because of Dunkel's failure to comply with orders directing her to provide information to decide if it had subject-matter jurisdiction. A motion to dismiss in *Hedman*—similar to the motion to dismiss here—is pending.

jurisdiction, improper venue, and failure to state a claim upon which relief may be granted, Doc. 27, and Dunkel's response in opposition, Doc. 38. The motion does not request dismissal with prejudice. *See generally* Doc. 27.

## I. Procedural Background

Dunkel filed the original complaint in July 2015. Doc. 1. Hamilton moved to dismiss it under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. 12. Dunkel responded by filing an amended complaint. Doc. 24. The Court therefore denied the motion to dismiss as moot. Doc. 25. Hamilton then filed the current motion to dismiss. Doc. 27. The parties later met and filed a case management report, and the Court entered a case management and scheduling order. Doc. 39; Doc. 45. Hamilton moved to stay discovery pending a decision on the motion to dismiss. Doc. 46. The Court granted the motion and stayed all deadlines in the case management and scheduling order. Doc. 47. There are no other pending motions.

## II. Amended Complaint

The amended complaint alleges the following facts. Dunkel is a citizen of Florida. Doc. 24 ¶ 2. She is married to Michael Dunkel. Doc. 24 ¶ 32. Hamilton is a citizen of Maryland. Doc. 24 ¶ 3. Security Assistance Corporation ("SAC") is a Virginia corporation with its principal place of business in Virginia. Doc. 24 ¶¶ 7, 8. SAC participated in the 8(a) Business Development Program administered by the United States Small Business Administration.[3] Doc. 24 ¶ 9. To gain that participation,

---

[3]According to the United States Small Business Administration, "The 8(a) Business Development Program is a business assistance program for small disadvantaged businesses. The 8(a) Program offers a broad scope of assistance to

Hamilton falsely represented she was SAC's owner and chief executive officer. Doc. 24 ¶¶ 7, 20, 21.

From 2005 to 2012, Michael Dunkel had a business relationship with Hamilton and SAC. Doc. 24 ¶ 22. She misled him "into believing she had appropriate certifications to deal with" the National Aeronautics and Space Administration ("NASA") and other government agencies. Doc. 24 ¶¶ 23, 36. She knew she did not because she knew SAC had no minority owner and therefore did not qualify for participation in the 8(a) program. Doc. 24 ¶ 24. She concealed from the Dunkels that SAC should not have participated in the 8(a) program. Doc. 24 ¶ 41. As a result, he "entered into a [fraudulent] contractual relationship" with her, was associated with the fraud, was convicted of a federal crime, was sentenced to 60 months' imprisonment, and was ordered to forfeit $2.9 million. Doc. 24 ¶¶ 37–39, 43, 47.

Michael Dunkel's imprisonment has caused Dunkel depression, emotional distress, and financial loss. Doc. 24 ¶¶ 28, 29, 30, 34. She lost her home, had to move to rental property, and had to find work more than an hour away. Doc. 24 ¶ 29. She lost his "society, affection[,] and companionship" after "29 years of partnership." Doc. 24 ¶ 32. She has to do things he used to do and work "endless hours" to meet "daily living obligations" and care for her elderly mother-in-law. Doc. 24 ¶¶ 33, 34.

Dunkel asserts common law tort claims for fraudulent misrepresentation (count I), intentional infliction of emotional distress (count II), loss of consortium

firms that are owned and controlled at least 51% by socially and economically disadvantaged individuals." *See* U.S. Small Business Administration, "About the 8(a) Business Development Program," https://perma.cc/2WBJ-3AV4.

(count III), fraud in the inducement (count IV), and concealment (count V). Doc. 24. She seeks compensatory and punitive damages, including damages for losing her home, losing her husband's current and future income, pain and suffering, and the $2.9 million forfeiture amount. Doc. 24 ¶¶ 45−47.

## III.   Motion to Dismiss & Response

Hamilton argues the Court should dismiss the amended complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue, observing the amended complaint does not allege contact between her and Florida. Doc. 27 at 4−8. She also argues the Court should dismiss the claims under Rule 12(b)(6) for failure to state claims upon which relief may be granted, contending Dunkel has alleged insufficient facts to support any of them. Doc. 27 at 10−18. Within that argument, she contends Dunkel lacks standing to bring the fraud-based claims.

Hamilton attaches to the motion: (1) a plea agreement in which Michael Dunkel pleaded guilty to major fraud against the United States, Doc. 27-1; (2) a stipulated statement of facts in which Michael Dunkel stipulated to the truth and accuracy of facts supporting his plea, Doc. 27-2; (3) a consent order of forfeiture in which Michael Dunkel agreed to the entry of an order of forfeiture in the form of a money judgment for $2,960,697.37, Doc. 27-3; and (4) the judgment in which Michael Dunkel was sentenced to 60 months' imprisonment, to be followed by 24 months' supervised release, and ordered to pay $12,500 in fines, Doc. 27-4.

Dunkel responds the Court has personal jurisdiction over Hamilton and venue is proper in this district because Michael Dunkel performed work for SAC at NASA

facilities here and Hamilton caused her harm here. Doc. 38 at 2–10. She contends the Court should not consider Michael Dunkel's guilty plea because his decision to plead was a "business decision" based on age and health and he has moved for post-conviction relief under 28 U.S.C. § 2255 on the ground the plea was not knowingly, voluntarily, and intelligently made.[4] Doc. 38 at 1, 11. She details facts she contends establish Hamilton's fraud. Doc. 38 at 2–10.

Dunkel attaches to the response: (1) an agreement between Michael Dunkel and SAC executed in October 2007 in which he agrees to provide "consulting services" to SAC until September 2011, Doc. 38-1; (2) June 2011 testimony by Hamilton before a subcommittee of the United States House of Representative's Committee on Small Business in which she states she is SAC's president and chief executive officer,[5] Doc. 38-2 at 2–19; (3) an article from the Washington Business Journal in which a reporter states she, like the congressional subcommittee, had been "duped" by Hamilton, Doc. 38-2 at 20; (4) proposed debarments from the 8(a) program from an unspecified source,[6] Doc. 38-3; (5) emails between Michael Dunkel and SAC employees,[7] Doc. 38-

---

[4]Michael Dunkel's § 2255 motion is docket entry 34 in *United States v. Michael Dunkel*, No. 1:13-cr-220-GBL (E.D. Va.). It was filed on March 19, 2015. It remained pending as of the filing of this report and recommendation.

[5]On a page attached to the subcommittee testimony, Dunkel states, "This public record is an example of defendant's misrepresentation to plaintiff and plaintiff's husband. Plaintiff's husband and plaintiff relied on these representations as fact, causing plaintiff's husband to continue to consult for SAC." Doc. 38-2 at 1.

[6]On a page attached to the proposed debarments, Dunkel states, "Record of proposed debarments of everyone associated with the initial 8A fraud. Please note Plaintiff's husband's name and company are not listed." Doc. 38-3 at 1.

[7]On a page attached to the emails, Dunkel states, "Hertogs' (Hamilton's brother) email response instructing plaintiff's husband to continue work and that

4; (6) a 2015 article from the United States Attorney's Office for the Eastern District

of Virginia explaining Hamilton agreed to pay $300,000 to settle civil claims "arising

from a fraudulent scheme to establish SAC as a front company,"[8] Doc. 38-5; (7)

Hamilton's prepared statement for her congressional subcommittee testimony, Doc.

38-6; and (8) a stipulated statement of facts from the criminal case against Hamilton

in which she stipulated to the truth and accuracy of facts supporting her guilty plea,[9]

---

Hamilton does indeed own SAC the day after the Federal Agents raid. Plaintiff's husband refused to do any further work without specific instruction from NASA, forfeiting $350,000 in labor charges." Doc. 38-4 at 1.

[8]On a page attached to the United States Attorney's Office article, Dunkel states,

> The relevant dates of the defendant's fraud are contained within PACER Case #1:13cr75. In addition, the attached document is found at the listed website.

> It is clear Defendant is aware of her culpability. Note the dates of the fraud regards the SBA, that all of the co-conspirators were in the Arlington, Virginia area and employees of PSI. Plaintiff's husband was not one of them. Hamilton has clearly acknowledge[d] her liability for civil fraud claims.

Doc. 38-5 at 1.

[9]On a page attached to the facts stipulated by Hamilton, Dunkel states,

> Hamilton makes no claim that Mr. Dunkel ever knew of the 8A fraud perpetrated by Hamilton and he[r] co-defendants. In fact, the I.G. Agent from NASA told the plaintiff and her husband that SAC was a fraud. MBD, Inc. (Mr. Dunkel) had an exceptional reputation within NASA and various U.S.A.F. organizations. The Government admits Mr. Dunkel's work was excellent and provided substantial savings to the government. Trial testimony will completely refute the SOF attributed to Dunkel.

> Indeed, plaintiff's husband received multiple engineering excellence awards, never benefitted financially beyond billing actual hours and approved expenses. There was no "pass through" as alleged. That will be proven at trial. SAC and defendant Hamilton received 25−30% of every contract without performing any service other than billing the government. Multiple sub-contractors as well as current and

Doc. 38-7. Dunkel argues the documents prove Hamilton's fraud and her husband's innocence. *See generally* Doc. 38.

The stipulated facts supporting Michael Dunkel's and Hamilton's respective guilty pleas are detailed and lengthy. *See generally* Doc. 27-2; Doc. 38-7. Both Michael Dunkel and Hamilton admitted to having knowingly defrauded the United States through falsities bearing on SAC's ability to participate in the 8(a) program and obtain preferences for bids on government projects. *See* Doc. 27-2; Doc. 38-7.

## IV.   Law & Analysis

A court must hold a pleading drafted by a pro se litigant to a less stringent standard than one drafted by a lawyer. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Although a court must treat a pro se pleading leniently, the court cannot rewrite a deficient pleading for a party or otherwise serve as her de facto counsel. *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, because Dunkel is unrepresented, that less-stringent standard applies.

### A.   *Standing*

"No principle is more fundamental to the judiciary's proper role in our system

---

past NASA and U.S.A.F. Officers who [sic] will testify on behalf of plaintiff.

Hamilton does admit to a $300[] per day cocaine habit during the time MBD, Inc. did the work for SAC. Perhaps that explains the revisionist history claims made by her counsel in their most recent submittal.

Doc. 38-7 at 1.

of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoted authority omitted). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* At a "constitutional minimum," a plaintiff must allege she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

"In addition to these three constitutional requirements, ... prudential requirements pose additional limitations on standing." *Hawes v. Gleicher*, 745 F.3d 1337, 1341 (11th Cir. 2014) (quoted authority omitted). "For example, a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Unlike constitutional standing requirements, "the prudential requirements are essentially a matter of self-governance." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006) (internal quotation marks omitted).

The question of prudential standing often is resolved by the nature and source of the claim. *Warth*, 422 U.S. at 500; *see also Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) ("[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents."). Whether based on constitutional requirements or prudential considerations, the "rules of

standing … are threshold determinants of the propriety of judicial intervention." *Warth*, 422 U.S. at 517–18.

There is an exception to application of the prudential standing doctrine if (1) the jurisdictional standing requirements are met, (2) the plaintiff has a close relationship with the person possessing the right to the claim, and (3) there is a "hindrance" to the possessor's ability to bring the claim. *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). A hindrance may exist if the possessor of the right is deterred from suing, her claims are "imminently moot," or she faces "systemic practical challenges to filing suit." *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208–09 (6th Cir. 2011).

As evidenced by the many prisoner lawsuits nationwide, incarceration is not a hindrance to ability to bring a claim. *See, e.g., McDonald v. Coyle*, 175 F. App'x 947, 949 (10th Cir. 2006) (husband established no hindrance to imprisoned wife's ability to bring malpractice claim against her defense lawyer); *McDonald v. Van Houtte*, 160 F. App'x 673, 675 (10th Cir. 2005) (same); *Massey v. Helman*, 196 F.3d 727, 741 (7th Cir. 1999) (prison doctor did not have standing to bring claims on behalf of inmates in part because he made no allegation that "the inmates have any obstacle preventing them from properly asserting their own rights"); *McCollum v. Cal. Dept. of Corr. & Rehab.*, 647 F.3d 870, 879 (9th Cir. 2011) (chaplain did not have standing to assert inmates' rights because "the inmates are able to assert their own rights").

"It is the responsibility of the complainant clearly to allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise

of the court's remedial powers." *Warth*, 422 U.S. at 518. "For purposes of ruling on a motion to dismiss for want of standing, … the trial court … must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 501. "At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.* (internal citation omitted). "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* at 501–02.

Hamilton summarily asserts, "Dunkel cannot sue on behalf of her husband and lacks standing to sue for alleged frauds committed against her husband." Doc. 27 at 12. Dunkel does not address standing. *See generally* Doc. 38.

Accepting as true the factual allegations in the amended complaint and construing them in Dunkel's favor, they satisfy constitutional standing requirements but not prudential ones. They make clear Dunkel rests all but her loss-of-consortium claims solely on her husband's rights and interests. Even inferring she—as his wife of many years—was his close confidante, the alleged fraudulent conduct was directed at him or his company, not her, making the fraud-based claims his or his company's, not hers, to bring. The only allegation in the amended complaint regarding action or inaction involving Dunkel is a single conclusory one under the concealment claim that could apply to anyone unassociated with Hamilton. *See* Doc. 24 ¶ 41 ("Plaintiff, Pamela Dunkel, asserts that defendant refrained from disclosing to her husband or

10

herself that in fact [SAC] was not properly classified and was not a legal 8(a) Company, having fraudulently obtained SBA 8(a) certification."). That Dunkel lacks standing to bring her husband's claims would not change even if the Court considered, for her benefit, the unsworn statements and documents with her response to the motion to dismiss because they likewise indicate her lack of involvement.

The exception to application of the prudential standing doctrine does not apply. Even though Dunkel alleges marriage to Michael Dunkel (a presumed close personal relationship), she alleges no fact indicating a hindrance to him bringing his claims directly. His incarceration does not suffice. *See, e.g.*, *Coyle*, 175 F. App'x at 949; *Van Houtte*, 160 F. App'x at 675; *Massey*, 196 F.3d at 741; *McCollum*, 647 F.3d at 879.

I recommend dismissing all but the loss-of-consortium claim based on the prudential standing doctrine and, alternatively, based on failure to state a claim upon which relief may be granted (discussed below).

## B.   *Personal Jurisdiction & Venue*

Under Federal Rules of Civil Procedure 12(b)(2) and (b)(3), a party may move to dismiss an action for lack of personal jurisdiction and improper venue. Unlike lack of subject-matter jurisdiction, those defenses are "personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).

A defendant may waive the defenses of lack of personal jurisdiction and improper venue by failing to timely raise them. *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988). A defendant fails to timely raise them by

11

failing to raise them in a first motion to dismiss. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009) (personal jurisdiction); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993) (venue).[10] If a defendant waives them, the court may not take action on them. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (personal jurisdiction); *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985) (venue).

By failing to raise the defenses of personal jurisdiction and improper venue in the first motion to dismiss even though they had been available at that time, *see* Doc. 12 (first motion to dismiss raising only failure to state a claim upon which relief may be granted), Hamilton waived them, and the Court cannot take action on them.[11]

---

[10]Advisory committee notes to Rule 12 explain why a defendant must raise lack of personal jurisdiction and improper venue in a first motion to dismiss:

> [Rule 12] has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. … This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case.

Fed. R. Civ. P. 12, 1966 advisory committee notes.

Although Dunkel does not argue Hamilton waived the personal-jurisdiction and venue defenses, the Court may consider waiver on its own because the failure to raise the defenses in the first motion to dismiss affects the management of the case. *C.f. Lechoslaw v. Bank of Am., N.A.*, 618 F.3d 49, 55 (1st Cir. 2010) (reviewing waiver issue for abuse of discretion and explaining waiver is within discretion of district court "consistent with its broad duties in managing the conduct of cases pending before it").

[11]A defendant's participation in a case does not constitute waiver of personal-jurisdiction and venue defenses unless the defendant gives the plaintiff a "reasonable

Although the Court did not substantively rule on the first motion to dismiss because Dunkel's filing of the amended complaint rendered it moot, Doc. 25, raising the defenses in that motion could have led the action on a different path including, perhaps, a transfer to a different district. Dismissal for lack of personal jurisdiction or improper venue is unwarranted.

## C.   *Failure to State Claims*

### 1.   *Standards*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." To decide a Rule 12(b)(6) motion, a court may consider only the factual allegations in the complaint, anything attached to the complaint, anything extrinsic to the complaint that is

---

expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesth. Chicago, LLC v. Anesth. Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (analyzing waiver of personal-jurisdiction defense; citing case analyzing waiver of venue defense). Under that standard, Hamilton did not waive the defenses merely through participation in the case management conference or filing of the case management report while the second motion to dismiss was pending because neither caused the court wasted effort or could reasonably have caused Dunkel to believe Hamilton planned to defend the case on the merits in light of the pendency of the second motion to dismiss raising the defenses when those actions were taken. *See Am. Torch Tip Co. v. Dykema Gossett PLLC*, No. 8:11–CV–0202–T–23EAJ, 2011 WL 3171811, at *3 (M.D. Fla. Jul. 8, 2011) (unpublished) (party did not waive defense of lack of personal jurisdiction by appearing, filing a joint case management report, participating in the case management conference, and moving for reconsideration of the case management and scheduling order), *adopted by* 2011 WL 3170282 (M.D. Fla. July 27, 2011) (unpublished). *But see Nat'l Union Fire Ins. Co. of Pittsburg v. Beta Constr. LLC*, No. 8:10–cv–1541–T–26TBM, 2010 WL 4316573, at *1 (M.D. Fla. Oct. 26, 2010) (unpublished) (finding party waived defense of lack of personal jurisdiction by "entering an appearance and participating in the case management conference without objecting to the Court's personal jurisdiction").

central to the claim and without challenge to its authenticity, and any judicially noticeable facts. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). The court must accept as true factual allegations and construe them in the light most favorable to the non-movant. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 8(a) does not require detailed allegations but requires more than unadorned accusations. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. To survive a motion to dismiss under Rule 12(b)(6), the allegations must include enough factual matter that states a claim to relief plausible on its face; in other words, that permits the court to reasonably infer the alleged misconduct was unlawful. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Allegations merely consistent with liability are not facially plausible. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Federal Rule of Civil Procedure 9(b) supplements Rule 8(a). *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015). It requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud" but allows the plaintiff to allege scienter generally. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff usually must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the

[p]laintiff[]; and (4) what the [d]efendant[] gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316−17 (11th Cir. 2007). Failure to satisfy Rule 9(b) is a ground for dismissal. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

2.    *Judicially Noticeable Facts*

Under Federal Rule of Evidence 201, at any stage of a case and on its own, a court may take judicial notice of a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). If a court takes judicial notice of a fact before notifying a party, the party may be heard upon request. Fed. R. Evid. 201(e).

Here, to decide the motion to dismiss, the Court may judicially notice, from the documents attached to the motion and response, and from the docket sheets of the criminal cases in the Eastern District of Virginia, the following facts: Michael Dunkel pleaded guilty to major fraud, stipulated to the truth and accuracy of facts to support his guilty plea, and consented to the forfeiture of $2.9 million; the United States District Court for the Eastern District of Virginia entered a judgment of conviction against him, sentencing him to 60 months' imprisonment; the conviction has not been reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus; and Hamilton stipulated to the truth and accuracy of facts to support her guilty plea. Doc. 27-1−27-4; Doc. 38-7. Those facts can be accurately determined from a source whose accuracy cannot reasonably be questioned (the Clerk of Court for the

United States District Court for the Eastern District of Virginia). The Court also may judicially notice that Hamilton testified before the congressional subcommittee she was SAC's president and chief executive officer. Doc. 38-2. That fact too can be accurately determined from a source whose accuracy cannot reasonably be questioned (the Government Printing Office, https://www.gpo.gov/fdsys/pkg/CHRG-112hhrg67851/pdf/CHRG-112hhrg67851.pdf).

The Court may not judicially notice any fact from the other attachments (or any statements Dunkel includes with them) because they cannot be accurately determined from a source whose accuracy cannot reasonably be questioned and are not otherwise generally known. *See* Doc. 38-1 (the existence and substance of an agreement between Michael Dunkel and SAC); Doc. 38-2 at 20 (the existence and substance of a Washington Business Journal article); Doc. 38-3 (the existence and substance of proposed debarments from the 8(a) program from an unknown source); Doc. 38-4 (the substance of emails and the fact they had been exchanged); Doc. 38-5 (the existence and substance of an article from a United States Attorney's Office); Doc. 38-6 (the existence and substance of a prepared statement for a congressional subcommittee meeting).

3.    *Claims*

a.    Fraudulent Misrepresentation (count I)

Under Florida law, the elements of fraudulent misrepresentation are: (1) the defendant made a false statement about a material fact; (2) the defendant made the statement knowing its falsity; (3) the defendant made the statement with intent to

induce reliance on it; and (4) because of her justifiable reliance on the statement, the plaintiff was injured. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). A false statement may reach a plaintiff directly or circuitously but must be made with the intent it reach her and she act on it. *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 947 (Fla. Dist. Ct. App. 2012).

Hamilton argues the Court should dismiss the fraudulent-misrepresentation claim because Dunkel fails to allege facts to make plausible the existence of any element, and, for alleged circumstances constituting fraud, with the particularity Rule 9(b) requires. Doc. 27 at 10–12. Dunkel responds she has satisfied the elements of fraudulent misrepresentation by showing Hamilton falsely represented SAC was qualified to participate in the 8(a) program, she should have known that statement was false, she intended to induce Michael Dunkel to work for SAC, and he was injured by the sentence of incarceration and forfeiture judgment. Doc. 38 at 12. She contends her statement that Hamilton misled him "into believing she had appropriate certifications to deal with" NASA and other government agencies, Doc. 24 ¶ 23, satisfies Rule 9(b)'s particularity requirements. Doc. 38 at 13.

Dismissal of the fraudulent-misrepresentation claim is warranted because, at a minimum, Dunkel fails to allege facts to make plausible the existence of the third and fourth elements; specifically, that Hamilton made any false statement with the intent it reach Dunkel and she act on it or that Dunkel was injured because she

detrimentally relied on any false statement.[12]

In addition to applying the prudential standing doctrine, I recommend dismissing the fraudulent-misrepresentation claim on the independent ground it fails to state a claim upon which relief may be granted.

b.   Intentional Infliction of Emotional Distress (count II)

Under Florida law, the elements of an intentional-infliction-of-emotional-distress claim are: (1) the defendant deliberately or recklessly inflicted emotional distress; (2) the defendant engaged in outrageous conduct; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007).

As a threshold matter, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Met. Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278–79 (Fla. 1985). It is insufficient that the conduct is tortious, criminal, intended to inflict emotional distress, or characterized by malice, *id.,* and "mere insults, indignities, threats, or false accusations" do not suffice, *Williams v. Worldwide Flight SVCS. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App.

---

[12]The Court need not decide Hamilton's remaining arguments on the fraudulent-misrepresentation claim. To the extent the Court may judicially notice Hamilton's June 2011 testimony before the congressional subcommittee in which she states she is SAC's president and chief executive officer, Doc. 38-2, and that she later stipulated to facts indicating otherwise in the criminal case against her, Doc. 38-7, or to the extent the Court may allow Dunkel to amend the amended complaint to allege those facts, Dunkel arguably satisfies or could satisfy the requirement that she allege particular facts on the first and second elements; specifically, that Hamilton made a false statement about a material fact with knowledge of its falsity.

2004).[13] Whether conduct is "outrageous" is a question of law, and the standard is objective. *Matsumoto v. Am. Burial & Cremation Servs., Inc.*, 949 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2006).

Besides outrageousness, absent exceptions inapplicable here,[14] the conduct must be directed at the plaintiff and in her presence. *See Baker v. Fitzgerald*, 573 So. 2d 873, 873 (Fla. Dist. Ct. App. 1990) (affirming dismissal because "there was no showing of outrageous conduct directed at appellant herself."); *M.M. v. M.P.S.*, 556 So. 2d 1140, 1140–41 (Fla. Dist. Ct. App. 1989) (parents who were not present during abuse of child could not recover for distress caused by defendant's disclosure of abuse); *Habelow v. Travelers Ins. Co.*, 389 So. 2d 218, 220 (Fla. Dist. Ct. App. 1980) (affirming dismissal because alleged conduct was directed at plaintiff's husband; observing, "In all cases we have found in Florida recognizing the tort …, the plaintiff was the recipient of the insult or abuse, or the message was clearly directed at the

---

[13]*Compare Nims v. Harrison*, 768 So. 2d 1198, 1199–1200 (Fla. Dist. Ct. App. 2000) (defendant's alleged threats to kill the plaintiff and rape her children were sufficiently "outrageous") *with Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001) (employer's false promise to permanently employ plaintiff as a manager, which induced him to quit his old job and resulted in him not finding another job, insufficiently outrageous) *and Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (landlord's failure to maintain residence, resulting in appellants' constructive eviction and leaving them without alternative housing, insufficiently outrageous).

[14]In cases involving dead bodies or pictures of dead bodies, there is no strict requirement that the conduct occur in the plaintiff's presence or be directed toward her. *Williams v. City of Minneola*, 575 So. 2d 683, 694 (Fla. 5th DCA 1991) (recognizing that opinions disallowing claims for intentional infliction of emotional distress when relatives of the victim were not present during the acts and the defendant's conduct was not directed at them "did not concern dead bodies or pictures of dead bodies and so did not call into operation the unique considerations which apply in such cases").

plaintiff through a third person").

Hamilton argues the Court should dismiss the intentional-infliction-of-emotional-distress claim because Dunkel does not allege facts to show the plausibility of outrageous conduct, of her presence during the conduct, or that Hamilton deliberately inflicted emotional distress.[15] Doc. 27 at 12−15. Dunkel responds she has stated a claim because Hamilton knew the statements were false, Hamilton's conduct was outrageous because it was illegal and resulted in her husband's incarceration, and Hamilton's conduct caused emotional distress because she depended on her husband, lost her home, and had to return to work. Doc. 38 at 13–14.

Dismissal of the intentional-infliction-of-emotional-distress claim is warranted because Dunkel does not allege facts to show the plausible existence of outrageous conduct. Committing financial fraud is dishonest but not "beyond all possible bounds of decency." *See McCarson*, 467 So. 2d at 278–79 (quoted). That the alleged conduct is illegal does not mean it is "outrageous." *See id.* at 278. As this Court has explained, "mere deception, while unfortunate, does not amount to intentional infliction of emotional distress." *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1200 (M.D. Fla. 2002) (applying Florida law). Even if the allegations suffice for the outrageous-conduct threshold, Dunkel fails to allege facts to show

---

[15]Hamilton summarily asserts, "Dunkel also fails to allege … that her emotional distress was severe." Doc. 27 at 13. Because Hamilton has provided no argument or analysis for the assertion, and the assertion does not concern a threshold inquiry like standing or a matter that affects case management like failure to raise defenses in an original motion to dismiss, this report and recommendation does not address it.

Hamilton plausibly acted in her presence and with intent to inflict emotional distress against her.

In addition to applying the prudential standing doctrine, I recommend dismissing the intentional-infliction-of-emotional-distress claim on the independent ground it fails to state a claim upon which relief may be granted.

c.   Loss of Consortium (count III)

Under Florida law, a plaintiff may bring a loss-of-consortium claim if a defendant's intentional tort injured her spouse. *Habelow*, 389 So. 2d at 220. The claim is "derivative" insofar as she may recover only if her spouse has a claim against the same defendant, *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971), but distinct insofar as she may bring the claim without joinder of her spouse, *Busby v. Winn & Lovett Miami, Inc.*, 80 So. 2d 675, 676 (Fla. 1955). An adverse judgment on the primary claim bars recovery on the derivative claim. *Albritton v. State Farm Mut. Ins. Co.*, 382 So. 2d 1267, 1268 (Fla. Dist. Ct. App. 1980).

Hamilton argues the Court should dismiss the loss-of-consortium claim because "any such claim would be barred by an adverse judgment by virtue of Michael Dunkel's guilty plea and conviction in the Eastern District of Virginia." Doc. 27 at 15. Dunkel responds she has stated a claim for loss of consortium because Hamilton induced her husband to commit a felony by making fraudulent misstatements, and his incarceration has deprived her of a sexual relationship and the "affections, solace, comfort, companionship, conjugal life, fellowship, society, and assistance" of a

21

successful marriage. Doc. 38 at 14.[16]

To ensure finality and avoid inconsistent judgments, the United States Supreme Court has long enforced the principle that one cannot prevail in a civil tort action if doing so would undermine a final criminal judgment. *Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994). Thus, for example, a common-law action for malicious prosecution requires proof of termination of the prior criminal proceeding in favor of the accused, and one cannot bring a civil-rights or *Bivens*[17] claim if judgment in his favor necessarily would imply the invalidity of a criminal conviction not reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus. *See Heck*, 512 U.S. at 486−87 (discussing malicious prosecution; involving 42 U.S.C. § 1983 claim); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (involving *Bivens* claims); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319 (M.D. Fla. 2005) (involving 42 U.S.C. § 1985 claims; citing cases applying principle to 42 U.S.C. §§ 1983, 1985, and 1986 claims; also dismissing civil racketeering claims against criminal co-conspirators to avoid "absurdity": "a criminal conspirator's recovery from his co-conspirators of the loot stolen from fraud victims by the conspirators and eventually

---

[16]Hamilton summarily argues the Court should dismiss the loss-of-consortium claim because "Dunkel has failed to plead a direct or primary claim by her husband against Hamilton." Doc. 27 at 15. Because she has provided no argument or analysis for the argument aside from general law that a loss-of-consortium claim is derivative, and the argument does not concern a threshold inquiry like standing or a matter that affects case management like failure to timely raise waivable defenses, this report and recommendation does not address it.

[17]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 395 (1971) (holding person injured by federal agent's constitutional violation may recover damages).

subject to forfeiture pursuant to the enforcement of the criminal laws"). Dismissal on that basis should be without prejudice to ensure an avenue for relief if the criminal conviction is later reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus. *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).

Dismissal of the loss-of-consortium claim is warranted because the same principle would apply to preclude Michael Dunkel from prevailing in a civil action against Hamilton. To convict him, the United States District Court for the Eastern District of Virginia had to have found he "knowingly" executed a scheme with the intent to "defraud the United States" or "obtain money or property by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1031 (quoted). Finding in any civil action by him against Hamilton he had not known her statements were false[18] would undermine the federal criminal conviction, which has not been reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus. Because he has no primary claim against Hamilton, Dunkel's derivative claim for loss of consortium fails. *See Ehlers v. United States Navy*, 16-CV-30 (DWF/TNL), 2016 WL 1592478, at *3 (D. Minn. 2016), *adopted sub nom. by Edwin v. United States Navy*, CV 16-30 (DWF/TNL), 2016 WL 1559136 (D. Minn. 2016) (applying principle to bar wife's claim for loss of consortium under similar circumstances).[19]

---

[18]Because reliance on a statement known to be false is improper, someone who knows a statement is false cannot recover on fraud claims based on that statement. *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 93, 94–95 (Fla. 2002).

[19]On the effect of Michael Dunkel's criminal conviction, whether federal or Florida law applies in this diversity action does not affect the outcome. Florida also bars civil claims that would undermine criminal convictions. *See, e.g., Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. Dist. Ct. App. 2006) (applying principle to bar

I recommend dismissing the loss-of-consortium claim on the ground it fails to state a claim upon which relief may be granted.

d.    Fraud in the Inducement (count IV)

Under Florida law, the elements of fraud in the inducement are the same as those for fraudulent misrepresentation: (1) the defendant made a false statement about a material fact; (2) the defendant knew or should have known it was false; (3) the defendant made the statement with intent to induce reliance on it; and (4) because of her justifiable reliance on the statement, the plaintiff was injured. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 497 (Fla. Dist. Ct. App. 2001).

Hamilton argues the Court should dismiss the fraud-in-the-inducement claim because, as with the fraudulent-misrepresentation claim, Dunkel fails to allege facts to make plausible the existence of any element, and, for alleged circumstances

---

claims for battery, false arrest/imprisonment, and trespass that would undermine conviction for resisting arrest).

Relatedly, Florida and other state courts, as a matter of equity or public policy, hold a spouse may not recover for loss of consortium if caused by her spouse's wrongdoing. *See Jaffe v. Snow*, 610 So. 2d 482, 488 (Fla. Dist. Ct. App. 1992) (wife's loss of consortium claim was "the consequence of her husband's own wrong and she should not be allowed to benefit from it"); *accord Ashwood v. Patterson*, 49 So. 2d 848, 850 (Fla. 1951) ("There is … a fundamental equitable principle that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime" and that principle has been applied to bar derivative claims) (internal quotation marks omitted); *Tate v. Derifield*, 510 N.W.2d 885, 888 (Iowa 1994) (public policy required dismissal of consortium claim against informant for allegedly using false information to obtain illegal search warrant where evidence led to spouse's arrest, guilty plea, and conviction; "Because his responsibility for criminal conduct was established by his conviction, any injury [his spouse] suffered was a direct result of his own criminal violations."). Hamilton does not ask this Court to bar Dunkel's loss-of-consortium claim as a matter of equity or public policy, *see generally* Doc. 27 at 15, but this could be another good reason it would fail now or later.

constituting fraud, with the particularity Rule 9(b) requires. Doc. 27 at 16–17. Dunkel responds she has satisfied all required elements and the misrepresentation was made to her through Michael Dunkel because his job affected both of them. Doc. 38 at 15.

Because the elements for fraud in the inducement mirror the elements for fraudulent misrepresentation, dismissal of the fraud-in-the-inducement claim is warranted for the same reasons dismissal of the fraudulent-misrepresentation claim is warranted. In addition to applying the prudential standing doctrine, I recommend dismissing the fraud-in-the-inducement claim on the independent ground it fails to state a claim upon which relief may be granted.

e.    Concealment (count V)

Under Florida law, the elements of fraud by concealment are similar to the elements for fraudulent misrepresentation and fraud in the inducement: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be disclosed; (3) the defendant knew her concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation. *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. Dist. Ct. App. 2010). A duty to disclose arises if "one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003).

Hamilton argues the Court should dismiss the concealment claim because

Dunkel fails to allege facts showing plausibility that Hamilton owed Dunkel a duty to disclose or Dunkel detrimentally relied on the alleged concealment. Doc. 27 at 17–19. Dunkel responds she has established all elements for a claim for concealment but does not address the existence of a duty to disclose. Doc. 38 at 12–13.

Because all but one of the elements for concealment mirror the elements for fraudulent misrepresentation and fraud in the inducement, dismissal of the concealment claim is warranted for the same reasons dismissal of those claims is warranted, and for the additional reason Dunkel has not alleged facts showing the plausible existence of a duty to disclose owed to her by Hamilton.

In addition to applying the prudential standing doctrine, I recommend dismissing the concealment claim on the independent ground it fails to state a claim upon which relief may be granted.

## D.    *Amendment*

If a more carefully drafted complaint might state a claim, a litigant proceeding without a lawyer must be given at least one chance to amend the complaint before the court may dismiss it with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). But dismissal with prejudice is appropriate if granting leave to amend would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Granting leave to amend would be futile if the complaint as amended would still be properly dismissed. *Id.*

Here, leave to amend is unwarranted because the Court has already given Dunkel leave to amend, Doc. 25, she has not sought further leave to amend, Hamilton

has not requested dismissal with prejudice, and, considering the allegations and the response to the motion to dismiss (including, for Dunkel's benefit, the unsworn statements and documents attached to the response), any further amendment would be futile for the reasons stated above. Although Dunkel appears genuinely aggrieved by the conviction and incarceration of her husband, no claim for relief appears available to her under the circumstances she describes. I recommend declining to sua sponte permit further leave to amend.

## V. Conclusion

I respectfully recommend (1) **granting** Hamilton's motion to dismiss, Doc. 27; (2) **dismissing** all of the claims, and (3) **directing** the clerk to enter judgment dismissing the case and then close the case.

**Entered** in Jacksonville, Florida, on August 8, 2016.[20]

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   The Honorable Marcia Morales Howard
     Pamela Dunkel
     Counsel of Record

---

[20]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.